United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 5, 2000    Decided February 16, 2001

No. 99-5430

Eric Eldred, et al.,
Appellants

v.

Janet Reno,
In her official capacity as Attorney General,
Appellee

Appeal from the United States District Court
for the District of Columbia
(No. 99cv00065)

Lawrence Lessig argued the cause for appellants.  With
him on the briefs were Charles R. Nesson, Jonathan L.
Zittrain, Geoffrey S. Stewart, Gregory A. Castanias, and
Portia A. Robert.

Erik S. Jaffe was on the brief of amicus curiae Eagle
Forum Education & Legal Defense Fund.

Laura N. Gasaway, Lyman Ray Patterson, and Edward Walterscheid, appearing pro se, were on the brief of amici curiae Laura N. Gasaway, et al.

Alfred Mollin, Counsel, U.S. Department of Justice, argued the cause for appellee.  With him on the brief were David W. Ogden, Acting Assistant Attorney General, William Kanter, Counsel, and Wilma A. Lewis, U.S. Attorney.

Peter L. Felcher, Carey R. Ramos, Carl W. Hampe, Lynn B. Bayard, Gaela K. Gehring-Flores, Allan Adler, Fritz E. Attaway, Joseph J. DiMona, I. Fred Koenigsberg, and James J. Schweitzer were on the brief of amici curiae The Sherwood Anderson Literary Estate Trust, et al.

Before:  Ginsburg, Sentelle, and Henderson, Circuit Judges.

Opinion for the Court filed by Circuit Judge Ginsburg.

Separate opinion dissenting in part filed by Circuit Judge Sentelle.

Ginsburg, Circuit Judge:  The plaintiffs in this case, corporations, associations, and individuals who rely for their vocations or avocations upon works in the public domain, challenge the constitutionality of the Copyright Term Extension Act of 1998 (CTEA), Pub. L. No. 105-298, 112 Stat. 2827. This marks the first occasion for an appellate court to address whether the First Amendment or the Copyright Clause of the Constitution of the United States constrains the Congress from extending for a period of years the duration of copyrights, both those already extant and those yet to come.  We hold that neither does.

### I. Background

The CTEA amends various provisions of the Copyright Act of 1976, 17 U.S.C. s 101 et seq.  The portions of the CTEA at issue here extend the terms of all copyrights for 20 years as follows:  (1) For a work created in 1978 or later, to which an individual author holds the copyright, the Act extends the term to the life of the author plus 70 years.  See Pub L. No.

105-298 s 102(b)(1), 112 Stat. 2827; 17 U.S.C. s 302(a). (2) For a work created in 1978 or later that is anonymous, or pseudonymous, or is made for hire, the term is extended from 75 to 95 years from the year of publication or from 100 to 120 years from the year of creation, whichever occurs first. See Pub. L. No. 105-298 s 102(b)(3), 112 Stat. 2827; 17 U.S.C. s 302(c). (3) For a work created before 1978, for which the initial term of copyright was 28 years, the renewal term is extended from 47 to 67 years, thereby creating a combined term of 95 years. See Pub. L. No. 105-298 s 102(d), 112 Stat. 2827; 17 U.S.C. s 304. In all three situations, therefore, the CTEA applies retrospectively in the sense that it extends the terms of subsisting copyrights. As a result, the CTEA better aligns the terms of United States copyrights with those of copyrights governed by the European Union. See S. Rep. No. 104-315, at 7-8 (1996); Council Directive 93/98, art. 7, 1993 O.J. (L 290) 9.

The CTEA is but the latest in a series of congressional extensions of the copyright term, each of which has been made applicable both prospectively and retrospectively. In 1790 the First Congress provided, both for works "already printed" and for those that would be "[t]hereafter made and composed," initial and renewal terms of 14 years, for a combined term of 28 years. Act of May 31, 1790 s 1, 1 Stat. 124, 124. In 1831 the Congress extended the initial term to 28 years, thereby creating a combined term of 42 years. See Act of Feb. 3, 1831 s 1, 4 Stat. 436, 436. So the term remained until 1909, when the Congress extended the renewal term as well to 28 years, making for a combined term of 56 years. See Act of March 4, 1909 s 23, 35 Stat. 1075, 1080.

Between 1962 and 1974 the Congress passed a series of laws that incrementally extended subsisting copyrights. See Pub. L. No. 87-668, 76 Stat. 555 (1962); Pub. L. No. 89-142, 79 Stat. 581 (1965); Pub. L. No. 90-141, 81 Stat. 464 (1967); Pub. L. No. 90-416, 82 Stat. 397 (1968); Pub. L. No. 91-147, 83 Stat. 360 (1969); Pub. L. No. 91-555, 84 Stat. 1441 (1970); Pub. L. No. 92-170, 85 Stat. 490 (1971); Pub. L. No. 92-566, 86 Stat. 1181 (1972); Pub. L. No. 93-573, title I, s 104, 88 Stat. 1873 (1974). In 1976 the Congress altered the way the

term of a copyright is computed so as to conform with the
Berne Convention and with international practice.  See H.R.
Rep. No. 94-1476, at 135 (1976).  Thenceforth the term would
be the life of the author plus 50 years or, where there was no
identifiable author, the earlier of 75 years from the year of
publication or 100 years from the year of creation.  See Pub.
L. No. 94-553 ss 302-05, 90 Stat. 2541, 2572-76 (1976).  The
CTEA amends this scheme by adding 20 years to the term of
every copyright.

     The plaintiffs filed this suit against the Attorney General of
the United States to obtain a declaration that the CTEA is
unconstitutional.  Among the plaintiffs are a non-profit asso-
ciation that distributes over the internet free electronic ver-
sions of books in the public domain;  a company that reprints
rare, out-of-print books that have entered the public domain;
a vendor of sheet music and a choir director, who respectively
sell and purchase music that is relatively inexpensive because
it is in the public domain;  and a company that preserves and
restores old films and insofar as such works are not in the
public domain, needs permission from their copyright hold-
ers -- who are often hard to find -- in order to exploit them.

     The district court entered judgment on the pleadings in
favor of the Government and dismissed the plaintiffs' case in
its entirety.  On appeal, the plaintiffs renew their claims that
the CTEA both violates the First Amendment to the Consti-
tution and is in various ways inconsistent with the Copyright
Clause of Article I, s 8 of the Constitution, which authorizes
the Congress:  "To promote the Progress of Science and
useful Arts, by securing for limited Times to Authors and
Inventors the exclusive Right to their respective Writings and
Discoveries."

                          II. Analysis

     The plaintiffs claim that the CTEA is beyond the power of
the Congress and therefore unconstitutional for three rea-
sons:  first, the CTEA, in both its prospective and retrospec-
tive applications, fails the intermediate scrutiny appropriate
under the First Amendment; second, in its application to

preexisting works, the CTEA violates the originality require-
ment of the Copyright Clause; and third, in extending the
term of subsisting copyrights, the CTEA violates the "limited
Times" requirement of the Copyright Clause -- a require-
ment that they say is informed by the goal of "promot[ing]
the Progress of Science and useful Arts." Because each of
these grounds presents a pure question of law, we consider
them de novo. See, e.g., United States v. Popa, 187 F.3d 672,
674 (D.C. Cir. 1999).

A.    First Amendment

The First Amendment aspect of the plaintiffs' complaint
attacks the CTEA not only in its application to subsisting
copyrights but also insofar as it extends the terms of copy-
rights for works yet to be created. The Government ques-
tions plaintiffs' standing to complain in the latter regard.

1. Standing

Consider first the plaintiffs' standing with respect to works
that, though now subject to subsisting copyrights, will in due
course enter the public domain: The plaintiffs benefit from
using works in the public domain and, but for the CTEA, they
would be able to exploit additional works the copyrights to
which would have expired in the near future. As such, they
suffer an injury in fact that is traceable to the CTEA and that
we could redress by holding the Act invalid. See Lujan v.
Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The
Government concedes as much.

In view of the plaintiffs' standing to challenge the CTEA
with respect to works already copyrighted, the Government's
objection to the plaintiffs' standing with respect to works yet
to be created seems very weak indeed. The plaintiffs benefit
from works in the public domain and are deprived of that
benefit so long as such works are under copyright. That is as
true for works not yet created as for extant works on which
the copyrights are about to expire; the Government does not
draw any meaningful distinction between the two categories
of works. We conclude therefore that the plaintiffs have

standing to pursue their prospective claim under the First Amendment.

   2. The merits

     The decisions of the Supreme Court in Harper & Row Publishers Inc. v. Nation Enters., 471 U.S. 539 (1985), and of this court in United Video, Inc. v. FCC, 890 F.2d 1173 (1989), stand as insuperable bars to plaintiffs' first amendment theory. In Harper & Row the Court held that a magazine's advance publication of excerpts from the memoirs of former President Gerald Ford infringed the copyright thereon. 471 U.S. at 569. In doing so the Court explained how the regime of copyright itself respects and adequately safeguards the freedom of speech protected by the First Amendment.

     [C]opyright's idea/expression dichotomy "strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression." No author may copyright his ideas or the facts he narrates. 17 U.S.C. s 102(b). See e.g., New York Times Co. v. United States, 403 U.S. 713, 726, n. (1971) (Brennan, J., concurring) (Copyright laws are not restrictions on freedom of speech as copyright protects only form of expression and not the ideas expressed).

Id. at 556 (citation omitted). The first amendment objection of the magazine was misplaced "[i]n view of the First Amendment protections already embodied in the Copyright Act's distinction between copyrightable expression and uncopyrightable facts and ideas, and the latitude for scholarship and comment traditionally afforded by fair use." Id. at 560.

     In keeping with this approach, we held in United Video that copyrights are categorically immune from challenges under the First Amendment. There, certain cable companies petitioned for review of an FCC regulation providing that the supplier of a syndicated television program could agree to the program being broadcast exclusively by a single station in a local broadcast area. 890 F.2d at 1176-78. We rejected the first amendment aspect of their challenge as follows:

In the present case, the petitioners desire to make commercial use of the copyrighted works of others. There is no first amendment right to do so. Although there is some tension between the Constitution's copyright clause and the first amendment, the familiar idea/expression dichotomy of copyright law, under which ideas are free but their particular expression can be copyrighted, has always been held to give adequate protection to free expression.

890 F.2d at 1191.

The plaintiffs argue that "these authorities are restricted solely to the narrow case where a litigant demands a right to use otherwise legitimately copyrighted material," which case is "plainly distinct from [this] First Amendment challenge[ ] to the constitutionality of the statute granting a [copy]right in the first instance." We think the plaintiffs' purported distinction is wholly illusory. The relevant question under the First Amendment -- regardless whether it arises as a defense in a suit for copyright infringement or in an anticipatory challenge to a statute or regulation -- is whether the party has a first amendment interest in a copyrighted work. The works to which the CTEA applies, and in which plaintiffs claim a first amendment interest, are by definition under copyright; that puts the works on the latter half of the "idea/expression dichotomy" and makes them subject to fair use. This obviates further inquiry under the First Amendment.

The plaintiffs cite no case to the contrary. In two of the cases they do cite, Reno v. ACLU, 521 U.S. 844, 871-79 (1997), and Simon & Schuster, Inc. v. Members of NY State Crime Victims Bd., 502 U.S. 105, 115-23 (1991), the Supreme Court held statutes unconstitutional under the First Amendment because they were unjustifiably content based; the plaintiffs here do not claim that the CTEA is anything but content neutral. In San Francisco Arts & Athletics, Inc. v. United States Olympic Committee, also cited by the plaintiffs, the Court did indeed apply heightened scrutiny under the First Amendment to a statute granting the United States Olympic Committee trademark-like protection for the word

"Olympic." 483 U.S. 522, 535-41 (1987). Restricting the use
of particular words "runs a substantial risk of suppressing
ideas in the process," the Court explained. Id. at 532. As we
have seen, however, copyright protection cannot embrace
ideas; it therefore does not raise the same concern under the
First Amendment. Finally, although the plaintiffs assert that
the Second Circuit has reached the merits of a first amend-
ment challenge to an aspect of the Copyright Act of 1976, in
fact that court, after reviewing the case law, concluded that
the plaintiffs categorically lacked "any right to distribute and
receive material that bears protection of the Copyright Act."
Authors League of America v. Oman, 790 F.2d 220, 223
(1986).

   As this is all the support plaintiffs muster for their proposi-
tion, we need not linger further in disposing of it. Suffice it
to say we reject their first amendment objection to the CTEA
because the plaintiffs lack any cognizable first amendment
right to exploit the copyrighted works of others.

   B.   Requirement of Originality

   The plaintiffs' second challenge ostensibly rests upon Feist
Publications, Inc. v. Rural Telephone Service Co., in which
the Supreme Court held that telephone listings compiled in a
white pages directory are uncopyrightable facts: "The sine
qua non of copyright is originality." 499 U.S. 340, 345 (1991).
"Originality is a constitutional requirement" for copyright
because the terms "Authors" and "Writings," as they appear
in the Copyright Clause, "presuppose a degree of originality."
Id. at 346.

   The plaintiffs reason from this that the CTEA cannot
extend an extant copyright because the copyrighted work
already exists and therefore lacks originality. Not so. Origi-
nality is what made the work copyrightable in the first place.
A work with a subsisting copyright has already satisfied the
requirement of originality and need not do so anew for its
copyright to persist. If the Congress could not extend a
subsisting copyright for want of originality, it is hard to see
how it could provide for a copyright to be renewed at the

expiration of its initial term -- a practice dating back to 1790 and not questioned even by the plaintiffs today.

The plaintiffs' underlying point seems to be that there is something special about extending a copyright beyond the combined initial and renewal terms for which it was initially slated.  Nothing in Feist or in the requirement of originality supports this, however:  All they tell us is that facts, like ideas, are outside the ambit of copyright.  Undaunted in trying to advance their novel notion of originality, the plaintiffs point to cases that do not address the requirement of originality for copyright per se.  They point to no case or commentary, however, that calls into question the distinction between a new grant of copyright -- as to which originality is an issue -- and the extension of an existing grant.  That distinction reflects, at bottom, the difference between the constitutionally delimited subject matter of copyright and the Congress's exercise of its copyright authority with respect to that subject matter.

The plaintiffs do point out that the Supreme Court has said the "Congress may not authorize the issuance of patents whose effects are to remove existent knowledge from the public domain, or to restrict free access to materials already available."  Graham v. John Deere Co., 383 U.S. 1, 6 (1966).  The Court similarly stated, over a century ago, that the issuance of a trademark could not be justified under the Copyright Clause because the subject matter of trademark is "the adoption of something already in existence."  Trade-mark Cases, 100 U.S. 82, 94 (1879).  Applied mutatis mutan-dis to the subject of copyright, these teachings would indeed preclude the Congress from authorizing under that Clause a copyright to a work already in the public domain.

The plaintiffs read the Court's guidance more broadly, in the light of Feist, to mean that a work in the public domain lacks the originality required to qualify for a copyright.  That is certainly not inconsistent with the Court's opinion:  A work in the public domain is, by definition, without a copyright; where the grant of a copyright is at issue, so too is the work's eligibility for copyright, and thus the requirement of originali-

ty comes into play.  We need not adopt a particular view on
that point, however, as it has nothing to do with this case.
Here we ask not whether any work is copyrightable --
indeed, the relevant works are already copyrighted -- but
only whether a copyright may by statute be continued in
force beyond the renewal term specified by law when the
copyright was first granted.  For the plaintiffs to prevail,
therefore, they will need something other than the require-
ment of originality upon which to make their stand.

    C.   The Limitation of "limited Times"

    We come now to the plaintiffs' contention that the CTEA
violates the constitutional requirement that copyrights endure
only for "limited Times."  This claim at last speaks to the
duration rather than to the subject matter of a copyright:  If
the Congress were to make copyright protection permanent,
then it surely would exceed the power conferred upon it by
the Copyright Clause.

    The present plaintiffs want a limit well short of the rule
against perpetuities, of course.  And they claim to have found
it -- or at least a bar to extending the life of a subsisting
copyright -- in the preamble of the Copyright Clause:  "The
Congress shall have power ... To promote the Progress of
Science and useful Arts...."  Their idea is that the phrase
"limited Times" should be interpreted not literally but rather
as reaching only as far as is justified by the preambular
statement of purpose:  If 50 years are enough to "promote
... Progress," then a grant of 70 years is unconstitutional.
Here the plaintiffs run squarely up against our holding in
Schnapper v. Foley, 667 F.2d 102, 112 (1981), in which we
rejected the argument "that the introductory language of the
Copyright Clause constitutes a limit on congressional power."
The plaintiffs, however, disclaim any purpose to question the
holding of Schnapper;  indeed, they expressly acknowledge
"that the preamble of the Copyright Clause is not a substan-
tive limit on Congress' legislative power."  Their argument is
simply that "the Supreme Court has interpreted the terms
'Authors' and 'Writings' in light of that preamble, and that
this Court should do the same with 'limited Times.' "

The problems with this argument are manifest. First, one cannot concede that the preamble "is not a substantive limit" and yet maintain that it limits the permissible duration of a copyright more strictly than does the textual requirement that it be for a "limited Time." Second, although the plaintiffs claim that Feist supports using the preamble to interpret the rest of the Clause, the Court in Feist never suggests that the preamble informs its interpretation of the substantive grant of power to the Congress (which there turned upon the meaning of "Authors" and of "Writings," each standing alone). 499 U.S. at 345-47. Similarly, the Trade-Mark Cases cited in Feist rest upon the originality implied by "invention [and] discovery" and by the "writings of authors," and make no reference at all to the preamble. 100 U.S. at 93-94.

## III. The Dissent

The foregoing suffices to dispose of plaintiffs' arguments -- as Judge Sentelle, dissenting, implicitly recognizes -- and hence to resolve this case. Our dissenting colleague nonetheless adopts the narrow view of Schnapper urged by an amicus, although that argument is rejected by the actual parties to this case and therefore is not properly before us. See, e.g, 16A Charles Alan Wright et al., Federal Practice and Procedure s 3975.1 & n.3 (3d ed. 1999); Resident Council of Allen Parkway Vill. v. HUD, 980 F.2d 1043, 1049 (5th Cir. 1993) (amicus constrained "by the rule that [it] generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal"); cf. Lamprecht v. FCC, 958 F.2d 382, 389 (D.C. Cir. 1992) (intervenor as nonparty "cannot expand the proceedings" or "enlarge those issues presented"). This is particularly inappropriate because a court should avoid, not seek out, a constitutional issue the resolution of which is not essential to the disposition of the case before it. Moreover, because the plaintiffs conspicuously failed to adopt the argument of the amicus, the Government was not alerted to any need to argue this point and did not do so. See Harmon v. Thornburgh, 878 F.2d 484, 494 (D.C. Cir. 1989) (court must

"avoid unnecessary or premature constitutional rulings" and
this concern "is heightened by the absence of meaningful
argument by the parties on [constitutional] question");  Ash-
wander v. Tennessee Valley Authority, 297 U.S. 288, 346
(1936) (Brandeis, J., concurring) ("Court will not 'anticipate a
question of constitutional law in advance of the necessity of
deciding it' ").

   Even were we to proceed as urged by the amicus and the
dissent, however, we would only review the CTEA as we
would any other exercise of a power enumerated in Article I.
That is we would ask, following McCulloch v. Maryland, 17
U.S. 316, 421 (1819), whether the CTEA is a "necessary and
proper" exercise of the power conferred upon the Congress
by the Copyright Clause; assuming Judge Sentelle is correct
and Schnapper is wrong about the relationship of the pream-
ble to the rest of that Clause, this would require that the
CTEA be an "appropriate" means, and "plainly adapted" to
the end prescribed in the preamble, "promot[ing] Progress of
Science and useful Arts."  The Congress found that extend-
ing the duration of copyrights on existing works would,
among other things, give copyright holders an incentive to
preserve older works, particularly motion pictures in need of
restoration.  See S. Rep. No. 104-315, at 12 (1996).  If called
upon to do so, therefore, we might well hold that the applica-
tion of the CTEA to subsisting copyrights is "plainly adapted"
and "appropriate" to "promot[ing] progress."  See Ladd v.
Law & Technology Press, 762 F.2d 809, 812 (9th Cir. 1985)
(upholding the deposit requirement of the Copyright Act of
1976 as "necessary and proper" because the purpose was "to
enforce contributions of desirable books to the Library of
Congress").

   Judge Sentelle concludes otherwise only because he sees a
categorical distinction between extending the term of a sub-
sisting copyright and extending that of a prospective copy-
right.  This distinction is not to be found in the Constitution
itself, however.  The dissent identifies nothing in text or in
history that suggests that a term of years for a copyright is
not a "limited Time" if it may later be extended for another
"limited Time."  Instead, the dissent suggests that the Con-

gress -- or rather, many successive Congresses -- might in
effect confer a perpetual copyright by stringing together an
unlimited number of "limited Times," although that clearly is
not the situation before us.  The temporal thrust of the
CTEA is a good deal more modest:  The Act matches United
States copyrights to the terms of copyrights granted by the
European Union, see Council Directive 93/98, art. 7, 1993 O.J.
(L 290) 9; in an era of multinational publishers and instanta-
neous electronic transmission, harmonization in this regard
has obvious practical benefits for the exploitation of copy-
rights.  This is a powerful indication that the CTEA is a
"necessary and proper" measure to meet contemporary cir-
cumstances rather than a step on the way to making copy-
rights perpetual; the force of that evidence is hardly diminish-
ed because, as the dissent correctly points out, the EU is not
bound by the Copyright Clause of our Constitution.  As for
the dissent's objection that extending a subsisting copyright
does nothing to "promote Progress," we think that implies a
rather crabbed view of progress:  Preserving access to works
that would otherwise disappear -- not enter the public do-
main but disappear -- "promotes Progress" as surely as does
stimulating the creation of new works.

    The position of our dissenting colleague is made all the
more difficult because the First Congress made the Copy-
right Act of 1790 applicable to subsisting copyrights arising
under the copyright laws of the several states.  See Act of
May 31, 1790, ss 1 and 3, 1 Stat. 124-25.*  The construction
of the Constitution "by [those] contemporary with its forma-
tion, many of whom were members of the convention which
framed it, is of itself entitled to very great weight, and when
it is remembered that the rights thus established have not
been disputed [for this long], it is almost conclusive."  Bur-
row-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 57 (1884).

_____

    * Indeed, each of the four later Congresses that extended the
terms of copyrights followed suit in doing so for subsisting as well
as prospective copyrights.  See Act of Feb. 3, 1831 s 1, 4 Stat. 436-
39;  Act of March 4, 1909 s 23, 35 Stat. 1075-88;  Pub. L. No.
94-553 s 301, 90 Stat. 2541-2602 (1976);  Pub. L. No. 105-298, 112
Stat. 2827 (2000).

The plaintiffs, recognizing the import of this "almost conclu-
sive" point for their own theory, try to avoid it with the
suggestion that application of the Act of 1790 to subsisting
copyrights "is fully understandable under a Supremacy
Clause analysis" in that it "clarif[ied] which law (state or
federal) would govern th[o]se copyrights."  But that will not
do:  A federal law is not valid, let alone supreme, if it is not
first an exercise of an enumerated power.  And the First
Congress was clearly secure in its power under the Copyright
Clause to extend the terms of subsisting copyrights beyond
those granted by the States.

Such guidance as the Supreme Court has given further
confirms us in this view of the matter.  The Court has made
plain that the same Clause permits the Congress to amplify
the terms of an existing patent.  As early as 1843 it estab-
lished that the status of a particular invention and its protec-
tions

> must depend on the law as it stood at the emanation of
> the patent, together with such changes as have been
> since made;  for though they may be retrospective in
> their operation, that is not a sound objection to their
> validity;  the powers of Congress to legislate upon the
> subject of patents is plenary by the terms of the Consti-
> tution, and as there are no restraints on its exercise,
> there can be no limitation of their right to modify them
> at their pleasure, so that they do not take away the
> rights of property in existing patents.

McClurg v. Kingsland, 42 U.S. 202, 206.

Within the realm of copyright, the Court has to the present
era been similarly deferential to the judgment of the Con-
gress.  "As the text of the Constitution makes plain, it is
Congress that has been assigned the task of defining the
scope of the limited monopoly that should be granted to
authors or to inventors in order to give the appropriate public
access to their work product;"  that "task involves a difficult
balance between [competing interests]" as reflected in the
frequent modifications of the relevant statutes.  Sony Corp. v.
Universal City Studios, Inc., 464 U.S. 417, 429 (1984).  And

still more recently:  "Th[e] evolution of the duration of copy-
right protection tellingly illustrates the difficulties Congress
faces [in exercising its copyright power].... [I]t is not our
role to alter the delicate balance Congress has labored to
achieve."  Stewart v. Abend, 495 U.S. 207, 230 (1990).

                        IV. Conclusion:

     In sum, we hold that the CTEA is a proper exercise of the
Congress's power under the Copyright Clause.  The plain-
tiffs' first amendment objection fails because they have no
cognizable first amendment interest in the copyrighted works
of others.  Their objection that extending the term of a
subsisting copyright violates the requirement of originality
misses the mark because originality is by its nature a thresh-
old inquiry relevant to copyrightability, not a continuing
concern relevant to the authority of the Congress to extend
the term of a copyright.

     Whatever wisdom or folly the plaintiffs may see in the
particular "limited Times" for which the Congress has set the
duration of copyrights, that decision is subject to judicial
review only for rationality.  This is no less true when the
Congress modifies the term of an existing copyright than
when it sets the term initially, and the plaintiffs -- as
opposed to one of the amici -- do not dispute that the CTEA
satisfies this standard of review.  The question whether the
preamble of the Copyright Clause bars the extension of
subsisting copyrights -- a question to which the analysis in
Schnapper seems to require a negative answer -- may be
revisited only by the court sitting en banc in a future case in
which a party to the litigation argues the point.

     For the foregoing reasons, the decision of the district court
is

                        Affirmed.

Sentelle, Circuit Judge, dissenting in part:  While I con-
cur with much of the majority's opinion, insofar as it holds
constitutional the twenty-year or more extension of copyright
protection for existing works, I dissent.  This issue calls upon
us to consider the scope of one of the clauses granting
enumerated powers to Congress, specifically, Art. I, s 8, cl. 8:

> Congress shall have power ... to promote the progress
> of science and useful arts, by securing for limited times
> to authors and inventors the exclusive right to their
> respective writings and discoveries....

In ascertaining the breadth of an enumerated power, I would
follow the lead of the United States Supreme Court in United
States v. Lopez, 514 U.S. 549, 552 (1995), and "start with first
principles."  The governing first principle in Lopez and in the
matter before us is that "[t]he Constitution creates a Federal
Government of enumerated powers."  514 U.S. at 552 (citing
Art. I, s 8).  The Framers of the Constitution adopted the
system of limited central government "to ensure the protec-
tion of our fundamental liberties."  Gregory v. Ashcroft, 501
U.S. 452, 458 (1991) (internal quotations and citations omit-
ted).  The Lopez decision, considering the validity of the so-
called Gun-Free School Zones Act, reminded us that "con-
gressional power under the Commerce Clause ... is subject
to outer limits."  514 U.S. at 556-57;  see also United States
v. Morrison, 120 S. Ct. 1740, 1748-49 (2000).

It would seem to me apparent that this concept of "outer
limits" to enumerated powers applies not only to the Com-
merce Clause but to all the enumerated powers, including the
Copyright Clause, which we consider today.  In determining
whether the legislation before it in such cases as Lopez
exceeded the outer limit of the authority granted under the
Commerce Clause, the Lopez Court laid out a precise outline
concededly not applicable by its terms to the construction of
other clauses, but I think most useful in conducting the same
sort of examination of the outer limits of any enumerated
power.  As a part of that analysis, the Court examined the
extension of congressional authority to areas beyond the core
of the enumerated power with a goal of determining whether

the rationale offered in support of such an extension has any
stopping point or whether it would lead to the regulation of
all human activity.  See 514 U.S. at 564 ("Thus, if we were to
accept the Government's arguments, we are hard pressed to
posit any activity by an individual that Congress is without
power to regulate.").  I fear that the rationale offered by the
government for the copyright extension, as accepted by the
district court and the majority, leads to such an unlimited
view of the copyright power as the Supreme Court rejected
with reference to the Commerce Clause in Lopez.

What then do I see as the appropriate standard for limiting
that power?  Again, the Lopez decision gives us guidance as
to the application of first principles to the determination of
the limits of an enumerated power.  Citing Gibbons v. Ogden,
22 U.S. (9 Wheat.) 1, 189-190 (1824), the Lopez Court ac-
knowledged "that limitations on the commerce power are
inherent in the very language of the Commerce Clause."  514
U.S. at 553.  Just so with the Copyright Clause.  What does
the clause empower the Congress to do?

> To promote the progress of science and useful arts, by
> securing for limited times to authors and inventors the
> exclusive right to their respective writings and discover-
> ies....

That clause empowers the Congress to do one thing, and one
thing only.  That one thing is "to promote the progress of
science and useful arts."  How may Congress do that?  "By
securing for limited times to authors and inventors the exclu-
sive right to their respective writings and discoveries."  The
clause is not an open grant of power to secure exclusive
rights.  It is a grant of a power to promote progress.  The
means by which that power is to be exercised is certainly the
granting of exclusive rights--not an elastic and open-ended
use of that means, but only a securing for limited times.  See
Stewart v. Abend, 495 U.S. 207, 228 (1990) ("The copyright
term is limited so that the public will not be permanently
deprived of the fruits of an artist's labors.").  The majority
acknowledges that "[i]f the Congress were to make copyright
protection permanent, then it surely would exceed the power

conferred upon it by the Copyright Clause." Maj. Op. at 10.
However, there is no apparent substantive distinction be-
tween permanent protection and permanently available au-
thority to extend originally limited protection. The Congress
that can extend the protection of an existing work from 100
years to 120 years; can extend that protection from 120 years
to 140; and from 140 to 200; and from 200 to 300; and in
effect can accomplish precisely what the majority admits it
cannot do directly. This, in my view, exceeds the proper
understanding of enumerated powers reflected in the Lopez
principle of requiring some definable stopping point.

    Returning to the language of the clause itself, it is impossi-
ble that the Framers of the Constitution contemplated perma-
nent protection, either directly obtained or attained through
the guise of progressive extension of existing copyrights.
The power granted by the clause again is the power "to
promote the progress of science and useful arts." As stated
above, Congress is empowered to accomplish this by securing
for limited times exclusive rights. Extending existing copy-
rights is not promoting useful arts, nor is it securing exclusiv-
ity for a limited time.

    The government has offered no tenable theory as to how
retrospective extension can promote the useful arts. As the
Supreme Court noted in Lopez and again in United States v.
Morrison, that Congress concluded a given piece of legisla-
tion serves a constitutional purpose "does not necessarily
make it so." Lopez, 514 U.S. at 557 n.2 (internal quotes
omitted); Morrison, 120 S. Ct. at 1752. Pressed at oral
argument, counsel for the government referred to keeping
the promise made in the original grant of exclusivity for a
limited time. The easy answer to this assertion is that
Congress is not empowered to "make or keep promises" but
only to do those things enumerated in Article I. The second
problem with the government's assertion is that Congress
made no promise to commit such an extension but only to
secure the exclusive rights for the original limited period.
Thirdly, the means employed by Congress here are not the
securing of the exclusive rights for a limited period, but
rather are a different animal altogether: the extension of

exclusivity previously secured.  This is not within the means
authorized by the Copyright Clause, and it is not constitution-
al.

    The majority responds to this problem of the statute's
exceeding the constitutional grant by reliance on Schnapper
v. Foley, 667 F.2d 102 (D.C. Cir. 1981), "in which we rejected
the argument 'that the introductory language of the Copy-
right Clause constitutes a limit on congressional power.' "
Maj. Op. at 10 (quoting 667 F.2d at 112).  I will concede that
it does not matter if I disagree with the language of Schnap-
per (which in fact I do) as it is our Circuit precedent and we
are bound by its holding unless and until that holding is
changed by this court en banc or by the higher authority of
the Supreme Court.  See, e.g., LaShawn A. v. Barry, 87 F.3d
1389, 1395 (D.C. Cir. 1996) (en banc) ("One three-judge panel
... does not have the authority to overrule another three-
judge panel of the court.  That power may be exercised only
by the full court."(citations omitted));  United States v. Kolter,
71 F.3d 425, 431 (D.C. Cir. 1995) ("This panel would be bound
by [a prior] decision even if we did not agree with it.").

    Therefore, it is immaterial that the prior opinion is, in my
view, erroneous in styling the granting clause of the sentence
as merely introductory when in fact it is the definition of the
power bestowed by that clause.  Thus, unless and until this
precedent is wiped away, if Schnapper has held that we may
not look to the language of this phrase to determine the
limitations of the clause then I must concede that we are
bound by that holding and join the majority's result.  Howev-
er, it does not appear to me that this is the holding of
Schnapper.  The Schnapper Court dealt with limited ques-
tions related to the application of the copyright laws to works
commissioned by the U.S. government.  In answering those
questions, the Schnapper Court held that "Congress need not
'require that each copyrighted work be shown to promote the
useful arts.' "  667 F.2d at 112 (quoting Mitchell Bros. Film
Group v. Cinema Adult Theater, 604 F.2d 852, 860 (5th Cir.
1979)).  It was in that context that the Schnapper Court
employed the wording relied upon by the majority concerning
the "introductory language" of the Copyright Clause.  Inso-

far as that wording is taken to be anything more than the determination concerning that limited analysis, it is not a holding but simply dicta (perhaps obiter dicta) and not binding on future panels.

Rather, the Schnapper analysis again takes us back to the Lopez approach to judicial interpretation of the enumerated powers clauses.  In Lopez, one of the means employed to determine the constitutionality of extended application of the Commerce Clause is an elemental inquiry into whether in each case the purportedly regulated action "in question affects interstate commerce."  514 U.S. at 561.  However, the jurisdictional element is not necessary under Lopez analysis of Commerce Clause regulation where Congress is directly regulating "the use of the channels of interstate commerce" or "persons or things in interstate commerce."  Id. at 558.  Similarly, I suggest that in analyzing the extent of congressional power under the Copyright Clause, the Schnapper holding that each individual application of copyright protection need not promote the progress of science and the useful arts does not mean that Congress's power is otherwise unlimited, anymore than the lack of a necessity for case-by-case analysis of the effect on interstate commerce validates anything Congress may wish to do under the rubric of the Commerce Clause.  Though, under Schnapper, we may not require that each use of a copyright protection promote science and the arts, we can require that the exercise of power under which those applications occur meet the language of the clause which grants the Congress the power to enact the statute in the first place.  This the extension does not do.  It is not within the enumerated power.

The majority suggests that my reading of Schnapper is somehow foreclosed by the fact that it accepts the argument of an amicus.  See Maj. Op. at 11 (citing 16A Charles Alan Wright et al., Federal Practice and Procedure s 3975.1 & n.3 (3d ed. 1999);  Resident Council of Allen Parkway Vill. v. HUD, 980 F.2d 1043, 1049 (5th Cir. 1993)).  The disposition I suggest would offend nothing in either Professor Wright's treatise or the cases aligned with it.  Neither I nor the amicus raise any issue not raised by the parties to the case,

nor disposed of by a majority of the court.  Appellants raise
the issue "whether ... the Copyright Clause of the Constitu-
tion of the United States constrains the Congress from
extending for a period of years the duration of copyrights,
both those already extant and those yet to come."  Maj. Op.
at 2 (emphasis added).  The majority addresses that issue
and holds against the appellant.  Maj. Op. at 15 ("we hold
that the CTEA is a proper exercise of the Congress's power
under the Copyright Clause").  That the amicus argues more
convincingly in appellants' favor on the issue raised by the
appellants than they do themselves is no reason to reject the
argument of the amicus.  Indeed, our Circuit Rules provide
that an amicus brief "must avoid repetition of facts or legal
arguments made in the principal (appellant/petitioner or
appellee/respondent) brief and focus on points not made or
adequately elaborated upon in the principal brief, although
relevant to the issues before this court."  Circuit Rule 29.
Obviously that is precisely what the amicus has done in this
case.

     Resident Council of Allen Parkway Village, relied on by
the majority, highlights this difference between introducing
issues not raised by the parties on the one hand and making
new arguments for issues otherwise properly raised on the
other.  As the Fifth Circuit noted in that case, "[w]e are
constrained only by the rule that an amicus curiae generally
cannot expand the scope of an appeal to implicate issues that
have not been presented by the parties to the appeal."  980
F.2d at 1049 (emphasis added).

     Our Circuit Rule and the Fifth Circuit are in good company
in allowing amici to make additional arguments that address
issues which the parties have raised but not argued in the
same fashion.  The Supreme Court has approved precisely
that approach.  In Teague v. Lane, 489 U.S. 288 (1989), that
Court considered a question of retroactivity as to a fair cross-
section jury venire in a case also raising a claim under Batson
v. Kentucky, 476 U.S. 79 (1986).  The Court noted that "[t]he
question of retroactivity with regard to petitioner's fair cross
section claim has been raised only in an amicus brief."  489
U.S. at 300.  Noting that the "question is not foreign to the

parties, who have addressed retroactivity with respect to petitioner's Batson claim," id., the Court proceeded to address the merits of the argument.

Nor are we constrained by the parties' apparent agreement as to the state of the law under Schnapper. The Supreme Court has made it clear that we cannot be bound by stipulations of law between the parties, where there is "a real case and controversy extending to that issue." United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446 (1993). As the High Court put it, " '[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.' " Id. (quoting Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991)).

I find two other arguments the majority invokes against my dissent unpersuasive. The enactment by the first Congress in 1790 regularizing the state of copyright law with respect to works protected by state acts preexisting the Constitution appears to me to be sui generis. Necessarily, something had to be done to begin the operation of federal law under the new federal Constitution. The Act of May 31, 1790, 1 Stat. 124, created the first (and for many decades only) federal copyright protection; it did not extend subsisting federal copyrights enacted pursuant to the Constitution. Cf. Wheaton v. Peters, 33 U.S. (8 Pet.) 591, 661 (1834) ("Congress, then, by this [copyright] act, instead of sanctioning an existing right, as contended for, created it."). The fact that the CTEA "matches United States copyrights to the terms of copyrights granted by the European Union," Maj. Op. at 13 (citing Council Directive 93/98, art. 7, 1993 O.J. (L 290) 9), is immaterial to the question. Neither the European Union nor its constituent nation states are bound by the Constitution of the United States. That Union may have all sorts of laws about copyrights or any other subject which are beyond the power of our constitutionally defined central government.

Therefore, I respectfully dissent.

United States Court of Appeals
for the district of columbia circuit


No. 99-5430                                September Term, 2000

                                    Eric Eldred, et al.,                    Filed
On: February 20, 2001
                                    [577078]
              Appellants

v.

Janet Reno, In her official capacity as Attorney General,
              Appellee


            Appeal from the United States District Court
                  for the District of Columbia
                      (No. 99cv00065)



        Before: Ginsburg, Sentelle and Henderson, Circuit Judges.

                            O R D E R

      It is ORDERED, by the court's own motion, that the opinion
issued by the court on February 16, 2001 be amended as follows:

      Page 11, lines 7-8:  Delete the words "so much as mentions
the preamble, let alone."


                          Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk